United States District Court
District of Massachusetts

```
                                )
FERRING PHARMACEUTICALS, INC.,  )
                                )
        Plaintiff-Counterclaim  )
        Defendant,              )
                                )    Civil Action No.
        v.                      )    13-12553-NMG
                                )
BRAINTREE LABORATORIES, INC.,   )
                                )
        Defendant-Counterclaim  )
        Plaintiff.              )
                                )
```

MEMORANDUM & ORDER

GORTON, J.

This case concerns two pharmaceutical companies that have competing products used for bowel cleansing before colonoscopies. Plaintiff/counterclaim-defendant Ferring Pharmaceuticals, Inc. ("Ferring") claims that Defendant/counterclaim-plaintiff Braintree Laboratories, Inc. ("Braintree") engaged in false advertising in violation of the Lanham Act and unfair trade practices in violation of M.G.L. ch. 93A. Ferring also alleges that Braintree diluted Ferring's trademark in Prepopik, Ferring's bowel preparation drug, by suggesting that Prepopik presents the same risks as Pico-Salax, a chemically identical product sold in Canada. Braintree counterclaims that Ferring has itself engaged in false advertising in violation of the Lanham Act and unfair trade

-1-

practices in violation of M.G.L. ch. 93A.  In August, 2014, the
Court dismissed Braintree's additional counterclaim that Ferring
misappropriated trade secrets.

Pending before the Court are Braintree's motions in limine
to exclude testimony from three experts that Ferring intends to
call during the trial.  For the following reasons, Braintree's
motion to exclude the testimony of Dr. Jeffrey Stec will be
denied, and its motion to exclude the testimony of Dr. Gerald
Bertiger and Philip Johnson regarding physician perceptions will
be denied without prejudice.

I. **Factual and Procedural Background**

Ferring, a Delaware corporation based in Switzerland,
advertises and sells Prepopik which is used to prep for
colonoscopies.  Braintree, a Massachusetts corporation with its
principal place of business in Braintree, Massachusetts,
advertises and sells Suprep which is likewise used prior to
colonoscopies.

In October, 2013, Ferring filed a complaint against
Braintree.  Braintree answered and filed a counterclaim in
November, 2013 and an amended answer and counterclaim in
December, 2013.  In August, 2014, the Court allowed Ferring's
motion to dismiss 1) Braintree's claims that Ferring had
misappropriated trade secrets and 2) Braintree's false
advertising claims with respect to "flexible dosing" and "helps

achieve success."  The Court denied Ferring's motion to dismiss

3) Braintree's false advertising claims relating to "superior

cleansing efficacy" and "lowest volume" and 4) Ferring's motion

to dismiss claims as to unfair and deceptive trade practices

under M.G.L. ch. 93A.  The Court also denied Braintree's motion

for summary judgment without prejudice and allowed Braintree to

amend paragraphs 40 through 42 of its counterclaim.

Currently before the Court are Braintree's motions in

limine to exclude the testimony of Dr. Jeffrey Stec and the

testimony of Dr. Gerald Bertiger and Philip Johnson with respect

to whether physicians were deceived.

## II.  Motions in Limine to Exclude Expert Testimony

### A. Legal Standard

The admission of expert evidence is governed by Fed. R.

Evid. 702 which codified the Supreme Court's holding in Daubert

v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its

progeny. United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002).

Rule 702 charges a district court with determining whether: 1)

"scientific, technical, or other specialized knowledge will

assist the trier of fact," 2) the expert is qualified "by

knowledge, skill, experience, training, or education" to testify

on that subject, 3) the expert's proposed testimony is based

upon "sufficient facts or data," 4) that testimony is the

product of "reliable principles and methods" and 5) the expert

-3-

"applies the principles and methods reliably to the facts of the case."

The Court must be vigilant in exercising its gatekeeper role because of the latitude given to expert witnesses to express their opinions on matters about which they have no firsthand knowledge and because an expert's testimony may be given substantial weight by the jury due to the expert's status. See Daubert, 509 U.S. at 595; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148 (1999).

The Court must, nonetheless, keep in mind that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Daubert, 509 U.S. at 596.  If an expert's testimony is within "the range where experts might reasonably differ," the jury, not the trial court, should be the one to decide among the conflicting views of different experts. Kumho Tire, 526 U.S. at 153.  When a dispute exists between two experts who both use reliable methods, that dispute "[goes] to the weight, not the admissibility, of the testimony." Cummings v. Standard Register Co., 265 F.3d 56, 65 (1st Cir. 2001).

### B. Application

### 1. Dr. Jeffrey Stec

Ferring plans to have Dr. Jeffrey Stec testify as an expert witness regarding whether and how much Braintree's actions caused economic harm to Ferring.  Dr. Stec's analysis relies on a disgorgement rather than a lost profit theory: he conducted a multivariate regression analysis to determine if Braintree's sales of Suprep increased as a result of Braintree's alleged false advertising.  Specifically, Dr. Stec compared what Braintree's sales would have been absent the alleged misconduct with what Braintree's sales actually were.  Braintree asserts that the testimony of Dr. Stec should be excluded on <u>Daubert</u> grounds.  According to Braintree, Dr. Stec's testimony is unreliable because it employs an inverse cubic trend model instead of a linear model for Suprep sales and ignores undisputed facts.

Braintree's objections to Dr. Stec's testimony go to the weight, not the admissibility, of Dr. Stec's expert opinions.  Although Braintree raises concerns about Dr. Stec's use of inverse cubic regression,

> regression analysis is a well recognized and scientifically valid approach to understanding statistical data, and courts have long permitted parties to use statistical data to establish causal relationships.

<u>In re Neurontin Mktg. & Sales Practices Litig.</u>, 712 F.3d 21, 42 (1st Cir. 2013).  Braintree's contention that a linear model would better fit the case goes to the strength of Dr. Stec's conclusion, not to the reliability of his methods.

Braintree also complains that Dr. Stec's analysis leaves out key variables.  Braintree finds it problematic that Dr. Stec's regression did not include the fact that Moviprep, the third major competitor in the branded bowel prep treatment market, was no longer being promoted and decreased its market share during the time analyzed.  Braintree further takes issue with the fact that Prepopik was not on the market for a portion of the time examined in Dr. Stec's analysis.  Ferring asserts that Dr. Stec left Moviprep out of his regression analysis because including it did not significantly affect the analysis and suggests that there is a factual disagreement with respect to the ongoing effect of the advertisements.

Failure to consider particular variables is not fatal to an expert's testimony, especially if the information that the expert did use was correct. <u>Cummings</u>, 265 F.3d at 65.  Dr. Stec's failure to include the variables flagged by Braintree may decrease the helpfulness of his testimony to the jury but it does not render the testimony inadmissible.  Therefore, the Court will deny Braintree's motion to exclude Dr. Stec's testimony.

## 2. Motions in Limine to Exclude the Opinions of Dr. Gerald Bertiger and Philip Johnson Regarding Whether Physicians were Deceived

### a. Dr. Gerald Bertiger

In addition to Dr. Stec, Ferring intends to call Dr. Gerald Bertiger as an expert witness.  Dr. Bertiger is a gastroenterologist who has 30 years of experience in the field and has conducted over 25,000 colonoscopies himself.  According to Dr. Bertiger's expert report, he will offer testimony regarding whether the Canadian Newsletter, the "What's Not New About Prepopik" flyer ("comparison detailer") and the "Super Clean" advertisement are materially false.

Braintree asserts that insofar as Dr. Bertiger's testimony involves speculation about the perceptions of other doctors, his testimony should be excluded.  Braintree contends that Dr. Bertiger only spoke with a few salespersons and doctors who were aware of the three publications at issue, essentially asserting that Dr. Bertiger lacks sufficient foundation to testify broadly regarding perceptions of the Canadian Newsletter, the comparison detailer and the Super Clean advertisement.  Braintree's objection focuses on a few exchanges that occurred during Dr. Bertiger's deposition.  Braintree carefully limits its objection and does not quibble with Dr. Bertiger's expert qualifications or testimony concerning clinical trials.

-7-

Braintree's objection is fundamentally about striking very limited portions of Dr. Bertiger's testimony for a lack of foundation.  The First Circuit Court of Appeals has previously allowed expert testimony regarding how individuals make decisions in a specialized field. <u>See First Marblehead Corp.</u> v. <u>House</u>, 541 F.3d 36, 41 (1st Cir. 2008) (holding that an expert witness with almost 20 years of experience as a finance and economics consultant who provided investment advice permissibly testified about how individuals "choose investments and arrange portfolios").  While the Court assumes the role of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," <u>Currier</u> v. <u>United Techs. Corp.</u>, 393 F.3d 246, 251 (1st Cir. 2004) (internal quotations and citations omitted), such a determination is better suited for trial.  Consequently, the Court will deny Braintree's motion to strike Dr. Bertiger's testimony regarding physician perceptions without prejudice.

### b. Philip Johnson

Ferring plans to call Philip Johnson as a rebuttal witness in response to Braintree's market research expert, Robert Klein. Mr. Klein designed and conducted three surveys for Braintree that examined 1) doctors' beliefs regarding the accuracy of certain sources of information about drugs, 2) the information gastroenterologists glean from the comparison detailer and 3)

-8-

the information that a Prepopik advertisement communicates.  Mr.
Klein also wrote a report as to his conclusions based on his
surveys.  As is Mr. Klein, Mr. Johnson is a market research
expert.

   Braintree contends that Mr. Johnson's testimony that
Braintree's comparison detailer indicates to readers that
Prepopik is neither safe nor effective is unreliable because the
survey at issue did not include a control that measured the
beliefs of survey takers before they participated in the study.
Braintree further complains that Mr. Johnson offers testimony
that will assist Ferring in its case-in-chief and thus is not
properly rebuttal testimony.

   Braintree's objections are without merit.  Mr. Johnson has
an M.B.A. from the University of Chicago and has apparently
overseen hundreds of surveys regarding consumer perceptions.  He
offers permissible expert testimony under Fed. R. Evid. 702 that
calls into question the conclusions of Braintree's expert, Mr.
Klein. Cf United States v. Valdivia, 680 F.3d 33, 50-51 (1st
Cir. 2012).  If expert testimony "rests upon good grounds, based
on what is known, it should be tested by the adversarial
process." Milward v. Acuity Specialty Prod. Grp., Inc., 639 F.3d
11, 15 (1st Cir. 2011) (internal quotations and citation
omitted).  Any issues with the lack of a control group go to the

weight, not the admissibility, of Mr. Johnson's testimony.
Cummings, 265 F.3d at 65.

     Moreover, Braintree's objections to Mr. Johnson's testimony
are contradictory: it argues that Mr. Johnson's testimony forms
new rather than rebuttal conclusions but also that Mr. Johnson
cannot submit his conclusions because he did not use a control
group.  Mr. Johnson presumably did not use a control group
because, instead of conducting studies of his own, he limited
his testimony to rebutting Mr. Klein's studies.  Braintree
cannot have its cake and eat it too by simultaneously arguing
that Mr. Klein is not a rebuttal witness but that he should have
conducted his own study.  It is within this Court's discretion
to permit Mr. Johnson to testify. Diefenbach v. Sheridan
Transp., 229 F.3d 27, 30 (1st Cir. 2000).  The Court will deny
the motion to exclude Mr. Johnson's testimony without prejudice.

## ORDER

For the foregoing reasons,

1) Braintree's motion to exclude the testimony of Dr. Jeffrey Stec (Docket No. 284) is **DENIED**, and

2) Braintree's motion to exclude the opinions of Dr. Gerald Bertiger and Philip Johnson regarding physician perceptions (Docket No. 346) is **DENIED WITHOUT PREJUDICE.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 23, 2016