**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| FERRING PHARMACEUTICALS, INC.,   ) | |
| ) | |
|       Plaintiff-Counterclaim ) | |
|       Defendant,             ) | |
| )   **Civil Action No.** |
|       v.                    )   **13-12553-NMG** |
| ) | |
| BRAINTREE LABORATORIES, INC.,   ) | |
| ) | |
|       Defendant-Counterclaim ) | |
|       Plaintiff.            ) | |
| _____ ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves two pharmaceutical companies that have developed and marketed competing products used for bowel preparation before colonoscopies. Plaintiff/counterclaim-defendant Ferring Pharmaceuticals, Inc. ("Ferring") claims that Defendant/counterclaim-plaintiff Braintree Laboratories, Inc. ("Braintree") engaged in false advertising in violation of the Lanham Act and unfair trade practices in violation of the Massachusetts Consumer Protection Act, M.G.L. ch. 93A ("Chapter 93A"). Ferring also claims that Braintree diluted Ferring's trademark in its product, Prepopik, by suggesting that it presents the same risks as Pico-Salax, a chemically identical product sold in Canada. Braintree counterclaims that Ferring has, itself, engaged in false advertising in violation of the

Lanham Act and unfair trade practices in violation of Chapter 93A.  In August, 2014, this Court dismissed Braintree's additional counterclaim that Ferring misappropriated trade secrets.

Ferring's motions to strike, Braintree's motion to strike and Braintree's renewed motion to unseal are currently pending before the Court.

## I. <u>Factual and Procedural Background</u>

Ferring, a Delaware corporation with a principal place of business in Switzerland, advertises and sells Prepopik which is used as a prep for colonoscopies.  Braintree, a Massachusetts corporation with its principal place of business in Braintree, Massachusetts, advertises and sells Suprep which is similarly used prior to colonoscopies.

In October, 2013, Ferring filed a complaint against Braintree which answered and counterclaimed.  In August, 2014, this Court allowed Ferring's motion to dismiss Braintree's counterclaims that Ferring had misappropriated trade secrets and falsely advertised with respect to "flexible dosing" and "helps achieve success."  The Court denied Ferring's motions to dismiss 1) Braintree's false advertising counterclaims relating to "superior cleansing efficacy" and "lowest volume" and 2) Braintree's counterclaims relating to unfair and deceptive trade practices under Chapter 93A.  The Court also denied Braintree's

-2-

motion for summary judgment without prejudice and allowed Braintree to amend paragraphs 40 through 42 of its counterclaim.

On April 22, 2016, Ferring filed motions for summary judgment on Braintree's counterclaim, its own claims and Braintree's affirmative defenses.  Braintree, in turn, filed its own motion for summary judgment.  The following motions to strike relating to the summary judgment motions are currently before the Court:

1) Ferring's motion to strike the declaration of Phillip Rakhunov, Braintree's counsel,

2) Ferring's motion to strike the declarations of Dr. Douglas Rex, John McGowan and Patrice Pickering,

3) Ferring's motion to strike the declarations of Dr. Douglas Rex, John McGowan, Dr. Jack DiPalma, Patrice Pickering and Shannon Callahan Meeks,

4) Ferring's motion to strike certain opinion testimony of Robert Klein and

5) Braintree's motion to strike Ferring's replies to Braintree's counterstatements of material facts.

Braintree's renewed motion to unseal certain documents and testimony is also pending before the Court.

## II.  **Ferring's Motions to Strike**

Ferring has filed numerous motions to strike declarations and testimony that Braintree offers in support of its motions for summary judgment and/or its oppositions to Ferring's motions for summary judgment.  Based upon evidentiary grounds, Ferring moves to strike the declarations of Phillip Rakhunov,

Braintree's counsel, Patrice Pickering and Shannon Callahan Meeks, two Braintree employees, and Robert Klein's third survey and related testimony.  Ferring also moves to strike the declarations of Dr. Douglas Rex, John McGowan and Dr. Jack DiPalma on the grounds that Braintree failed to disclose those individuals as experts or provide expert reports in accordance with this Court's deadline and Fed. R. Civ. P. 26(a)(2)(B).

### A. Evidentiary Objections to the Declarations of Phillip Rakhunov, Patrice Pickering and Shannon Meeks and Robert Klein's Third Survey

#### 1. Legal Standard

At the summary judgment stage, the Court may consider only evidence that would be admissible at trial. Fed. R. Civ. P. 56(c)(3).  Moreover, the party offering the evidence must demonstrate that the declarant has personal knowledge about the evidence and is competent to testify about it. Id.; see also, e.g., Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 14 (1st Cir. 2006).

#### 2. Analysis

##### a. The Declaration of Phillip Rakhunov

In support of its motion for summary judgment, Braintree submitted the declaration of Phillip Rakhunov, one of Braintree's attorneys.  That declaration summarizes evidence that Ferring produced in discovery, including emails, presentations, internal updates and records of conversations

with physicians.   Ferring asserts that Attorney Rakhunov's declaration fails to meet the Fed. R. Civ. P. 56(c) requirements that such declarations be

> [1] made on personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant or declarant is competent to testify on the matters stated.

Id. According to Ferring, Attorney Rakhunov's declaration contains impermissible opinion evidence, inadmissible hearsay and lacks foundation.   Braintree responds that the declaration contains descriptions rather than opinions and that the evidence described is excluded from the hearsay rule.

As an initial matter, the many declarations Ferring's counsel submitted to support or oppose various motions seriously weaken its assertion that Attorney Rakhunov lacks personal knowledge and is not competent to testify.   To the extent that the declaration contains impermissible opinions or conclusions without necessary foundation, the Court will disregard those portions of the declaration in its consideration of the motions.

Ferring's evidentiary objections require a more detailed analysis.   Ferring is correct in its assertion that it is "black-letter law" that impermissible hearsay cannot be considered for summary judgment. Fed. R. Evid. 801(d)(2); Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007).   If an out of court statement is used for

a non-hearsay purpose or falls within an exclusion to the
hearsay rule, however, it may be considered for summary
judgment. Davila, 498 F.3d at 17.

Here, the statements to which Attorney Rakhunov refers in
his declaration include emails from various Ferring employees,
such as sales representatives, the national sales director, the
director of business intelligence and medical science liaisons.
The declaration also refers to Ferring's internal updates,
presentations and reports.  These are statements by Ferring's
employees made in the course of their employment and are thus
excluded from the hearsay rule under Fed. R. Evid. 801(d)(2)(D).
Woodman v. Haemonetics Corp., 51 F.3d 1087, 1093-94 (1st Cir.
1995).

To the extent that the statements by Ferring employees
contain a second level of hearsay, specifically, statements from
physicians and other healthcare personnel about Prepopik's
efficacy, such statements are admissible as adoptive admissions.
Under Fed. R. Evid. 801(d)(2)(B), a statement qualifies as an
adoptive admission if the "party manifested that it adopted [it]
or believed [it] to be true." Id.  To determine whether a party
adopted a statement, a court must examine "the extent that the
adoptive party accepted and acted upon the evidence." Pilgrim v.
Trustees of Tufts Coll., 118 F.3d 864, 870 (1st Cir. 1997),

abrogated on other grounds by Crowley v. L.L. Bean, Inc., 303
F.3d 387, 405 (1st Cir. 2002).

In this case, Ferring's employees adopted physician and
healthcare personnel statements regarding Prepopik's efficacy.
For instance, the Ferring National Sales Director wrote in an
April 9, 2013 email "We are having problems with the efficacy at
times . . .", a Ferring national sales director's drop off list
included efficacy as a complaint, an internal February, 2014
review described efficacy as an issue in the Roanoke territory
and, in an August 13, 2014 email, a Ferring director wrote that
it was "no surprise that the efficacy challenges prevail."
Instead of contesting physician complaints regarding efficacy
issues, the Ferring employees attempted to solve those issues by
advising the use of additional hydration.  Consequently, the
physician and healthcare personnel statements within the Ferring
documents constitute adoptive admissions, the emails and
documents themselves are admissions by the party opponent and
the Court will deny the motion to strike Attorney Rakhunov's
declaration.

**b. The Declaration of Patrice Pickering**

Ms. Pickering is the vice president of marketing at
Braintree.  She submitted both an original and supplemental
declaration.  Her original declaration concerns the dates on
which Braintree authorized employees to use the Canadian Adverse

-7-

Reaction Newsletter ("Canadian Newsletter") and the "What's Not New About Prepopik" flyer ("comparison detailer"). She also estimates how often unauthorized uses of those pieces occurred based on documents found in discovery. Ferring asserts that Ms. Pickering's original declaration has foundational issues and is inadmissible hearsay. Braintree responds that Ferring has in its possession the records to which Ms. Pickering refers and contends that Ms. Pickering's statements do not involve hearsay because instructions are not hearsay and the other statements are being used to show notice and effect on the listener.

Ms. Pickering's original declaration states that "Braintree authorized Suprep sales representatives" to use the Canadian Newsletter and the comparison detailer. It includes the date on which Braintree authorized use of such materials and the date on which Braintree told employees to stop using them. Those instructions from Braintree are not hearsay at all because they are being offered to show that the instructions were given, not for the truth of the matter asserted. United States v. Murphy, 193 F.3d 1, 5 (1st Cir. 1999). Furthermore, the feedback from doctors to which Ms. Pickering's declaration refers is also being offered for a non-hearsay purpose, i.e. to show the effect on the listeners, in this case Braintree employees. See Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 19 (1st Cir. 2014). Because Ms. Pickering is the vice president of

-8-

marketing at Braintree, she has adequate personal knowledge to make her declaration.

Ms. Pickering's supplemental declaration includes two Exhibits. Exhibit A is a picture of a poster from Ferring's booth at a GI roundtable event in Dallas/Fort Worth, Texas that occurred on March 10-12, 2016. Exhibit B contains photos of Ferring promotions that "ran in widely published journals between September 2013 and October 2014." Ferring takes issue with the supplemental declaration, contending that the Court limited this case to specified advertisements mentioned in the Court's ruling on the motion to dismiss and that there is inadequate foundation for Exhibit B. Braintree responds that its counterclaim is not limited to specific advertisements.

The Court did not limit the false advertising claims to certain advertisements in its ruling on the motion to dismiss. Therefore, the Court rejects Ferring's contention that Braintree cannot offer evidence of promotions in addition to those mentioned in the subject ruling. Moreover, there is sufficient foundation for the Exhibit A photo from the GI roundtable event because Ms. Pickering explained where and when the photo was taken in her declaration.

The advertisements in Exhibit B, however, lack sufficient foundation. Ms. Pickering's declaration contains no information whatsoever about which publications these advertisements are

-9-

from, stating only that they were in "widely published journals." See <u>Baybank Middlesex</u> v. <u>1200 Beacon Properties, Inc.</u>, 760 F. Supp. 957, 962 n.5 (D. Mass. 1991).  Consequently, the Court will allow the motion to strike paragraph five in Ms. Pickering's supplemental declaration and Exhibit B to that declaration.  The Court notes that if Braintree were able to lay the requisite foundation for the photos in Exhibit B, such advertisements would likely be admissible at trial.

### c. The Declaration of Shannon Callahan Meeks

Ferring objects to the declaration of Shannon Callahan Meeks, a Braintree district manager, on the grounds that it is lay testimony based on hearsay and lacks foundation.  Braintree maintains that the out of court statements are offered for non-hearsay purposes, including to show their effect on the listener, Ms. Meeks, and to provide context for the audio recording and emails of Keeley Van Genderen, a Braintree sales representative.  Ferring refers to both the recording and Ms. Van Genderen's emails in its motions for summary judgment.

The out-of-court statements in Ms. Meeks' declaration are not being offered for their truth but rather to provide context for the audio-recording and emails on which Ferring relies in its statements of fact for its motions for summary judgment. Thus, those statements are not hearsay. <u>United States</u> v. <u>Murphy</u>, 193 F.3d 1, 5-6 (1st Cir. 1999).  Furthermore, there is

-10-

sufficient foundation for the testimony in Ms. Meeks'
declaration.  As a Braintree district manager, she would know
which methods of promotion were and were not authorized by
Braintree.  In contrast to Ferring's position, the fact that Ms.
Meeks limits her observations to her personal knowledge actually
strengthens her declaration against evidentiary attack.  The
Court will deny Ferring's motion to strike Ms. Meeks'
declaration.

### d. Robert Klein's Third Survey

Ferring also moves to strike Robert Klein's third survey
and his testimony regarding that survey.  Mr. Klein's third
survey examines the message that the Ferring "superior cleansing
efficacy" advertisement conveys.  The survey asked participants
whether the promotion communicated anything about the need for
an over-the-counter supplement to be used with Prepopik and how
important that information would be for a doctor making a
prescription.  Based on the survey, Mr. Klein concluded that the
Ferring promotion does not communicate that Prepopik requires a
supplement and that if doctors were informed that a supplement
was necessary, it would decrease the likelihood that the doctors
would prescribe the medication.

According to Ferring, this survey is irrelevant because the
Court limited Braintree's false advertising counterclaims to
claims regarding literal falsity in its earlier ruling.  Ferring

-11-

further asserts that Mr. Klein's third survey and related testimony must be stricken under Fed. R. Evid. 702 because it sets up a strawman and has flawed and leading questions. Braintree responds that its counterclaims include claims that the "superior cleansing" advertisement is both false and misleading and contends that the survey is relevant when juxtaposed to evidence that Ferring responded to efficacy issues by adding off-label instructions and suggesting the use of supplements. Braintree also claims that Mr. Klein's survey goes to the materiality of information omitted from Ferring's advertisement.

The Court did not limit Braintree's counterclaims regarding false advertising to literal falsity, and Braintree may continue to pursue claims that the "superior cleansing efficacy" and "lowest volume" promotions were misleading. Relevance is a low bar, and Mr. Klein's third survey and testimony regarding it are relevant to whether Ferring's advertisements were misleading. See Fed. R. Evid. 401, 402; United States v. Burnett, 579 F.3d 129, 132 (1st Cir. 2009).

Ferring does not contest Mr. Klein's credentials or the overall methodology of his survey and conclusions. Instead, Ferring quibbles about the form and sequence of Mr. Klein's questions. Consequently, Ferring's objections to the third survey go to the weight, not the admissibility, of Mr. Klein's

-12-

testimony. Cummings v. Standard Register Co., 265 F.3d 56, 65 (1st Cir. 2001).  Mr. Klein's survey can be tested through the "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" that are essential to the adversarial process. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596 (1993).  The Court will deny the motion to strike that survey and Mr. Klein's related testimony.

**B. Ferring's Objections to the Declarations of Dr. Douglas Rex, John McGowan and Dr. Jack DiPalma based on Inadequate Disclosure under Fed. R. Civ. P. 26**

**1. Legal Standard**

Parties are required to disclose experts that they may use to present evidence at trial under Fed. R. Evid. 702, 703 or 705 and provide a written report for experts who have been

> retained or specially employed to provide expert testimony in the case or [] whose duties as the party's employee regularly involve giving expert testimony.

Fed. R. Civ. P 26(a)(2)(B).  In contrast, for expert witnesses who have not been retained or specially employed, the party need only disclose the subject of the witness's expected expert testimony and a summary of the facts and opinions that the expert may offer. Fed. R. Civ. P. 26(a)(2)(C).

The First Circuit Court of Appeals has elaborated on the difference between retained and non-retained experts, explaining that when "the expert is part of the ongoing sequence of events" his opinion testimony is not retained. Downey v. Bob's Disc.

Furniture Holdings, Inc., 633 F.3d 1, 7 (1st Cir. 2011).  On the

other hand, if the

> expert comes to the case as a stranger and draws the
> opinion from facts supplied by others, in preparation for
> trial,

he is a retained or specially employed expert under Fed. R. Civ.

P. 26. Id.  Determining whether to preclude expert testimony

that has been disclosed after the pertinent deadline is "not a

strictly mechanical exercise," and in making the preclusion

decision, district courts may consider various factors such as

> the history of the litigation, the proponent's need for the
> challenged evidence, the justification (if any) for the
> late disclosure, and the opponent's ability to overcome its
> adverse effects.

Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este

And Sara Lopez, M.D., 456 F.3d 272, 276–77 (1st Cir. 2006)

(internal quotations and citation omitted).

### 2. Analysis

Ferring moves to strike the declarations of Dr. Douglas

Rex, John McGowan and Dr. Jack DiPalma that Braintree filed in

support of its motion for summary judgment and/or in opposition

to Ferring's motions for summary judgment.  Ferring contends

that by first disclosing Dr. Rex, Mr. McGowan and Dr. DiPalma on

February 15, 2016, Braintree violated the Court's February 14,

2016 deadline for disclosing expert rebuttal reports under Rule

26(a)(2)(B).  Ferring also asserts that even if those experts

-14-

are considered "non-retained," Braintree failed to provide a timely summary of their opinions in violation of Fed. R. Civ. P. 26(a)(2)(C).

### a. The Declaration of Dr. Douglas Rex

Dr. Rex is a non-retained, non-specially employed expert. Braintree is not paying him for his time and has not hired him to testify.  Rather, Dr. Rex's declaration addresses his SEE CLEAR I study that compared Prepopik to HalfLytely, another bowel preparation treatment.  Dr. Rex's three page declaration asserts that his SEE CLEAR I study and related article do not support Ferring's "superior cleansing efficacy" promotion.  In his declaration, Dr. Rex clarifies that the superior colon cleansing demonstrated by Prepopik in the study is likely due to the fact that Prepopik is a split dosage treatment, while HalfLytely is used only on the day before the colonoscopy.  Dr. Rex's declaration further states that he later conducted a study comparing Suprep and Prepopik that found that Suprep resulted in superior cleansing.

Given his involvement in the studies, Dr. Rex is "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven," and thus no Rule 26 report for Dr. Rex was required. Gomez v. Rivera Rodriguez, 344 F.3d 103, 113 (1st Cir. 2003).  Braintree's disclosure that Dr. Rex might provide opinions regarding the studies but that his testimony will be

largely factual in nature is sufficient disclosure under Rule 26(a)(2)(C), especially because Braintree anticipates calling Dr. Rex primarily as a fact witness.

Moreover, although it would have been prudent for Braintree to disclose, before the deadline for expert rebuttals, that it might call Dr. Rex, this Court will not strike his declaration because he was disclosed one day after the deadline. Such a modest oversight stands in contrast to other situations in which courts have found it appropriate to strike expert testimony. Santiago-Diaz, 456 F.3d at 275-78 (determining that preclusion of expert testimony was warranted when plaintiff did not disclose her expert until seven months after the close of discovery); Macaulay v. Anas, 321 F.3d 45, 52-53 (1st Cir. 2003) (holding that preclusion of expert testimony involving a new theory of liability disclosed only a week before trial was permissible).

The element of surprise that characterizes other cases in which expert testimony has been excluded is also lacking in this case. Macaulay, 321 F.3d at 51-52. Ferring was aware of Dr. Rex's studies and articles because its "superior cleansing efficacy" promotion referred to the 2010 article and depositions of various witnesses referred to both the 2010 and 2013 studies and articles. Dr. Rex was identified in Braintree's answers to interrogatories on October 6, 2014 and September 8, 2015, and

-16-

Dr. Rex was referred to during the deposition of Ferring's Rule 30(b)(6) witness.  Moreover, Ferring filed a supplemental disclosure of Dr. Gerald Bertiger in which Dr. Bertiger replies to the declarations from Dr. Rex, Mr. McGowan and Dr. DiPalma. It is within this Court's discretion to allow Dr. Rex's declaration to remain on the record. <u>Santiago-Diaz</u>, 456 F.3d at 276-77.

### b. The Declaration of John McGowan

John McGowan is the vice president of clinical research at Braintree.  His declaration notes that he oversaw a 2013 study comparing Suprep and Prepopik.  It also elaborates on the prescribing information sheets for Suprep and Prepopik as well as the Food and Drug Administration ("FDA") Center for Drug Evaluation and Research summary review of Prepopik.

Mr. McGowan is neither retained nor specially employed for his testimony.  His declaration relates largely to factual knowledge gained in the course of his daily job and the Suprep studies in which he was involved.  To the extent that any expert testimony is involved, it is not the testimony of a retained expert.  Braintree included Mr. McGowan in its initial disclosures, answers to interrogatories and also a Rule 26(a)(2)(C) disclosure.  Braintree's disclosure of Mr. McGowan as a non-retained expert occurred only one day after the deadline and Ferring has had the opportunity to respond to his

-17-

testimony through Dr. Bertiger's supplemental disclosure.  The
Court will not strike the declaration of Mr. McGowan.

### c. The Declaration of Dr. Jack DiPalma

Dr. DiPalma is the Medical Director for Braintree.  His
declaration addresses the FDA notice of contra-indication for
Prepopik patients with severe renal impairments and the FDA's
summary review.  The declaration also addresses two articles.
One, titled "Bowel Preparation before Colonoscopy," refers to
the risks of sodium picosulfate, the active ingredient in
Prepopik.  The other, "Hyponatremia and Sodium Picosulfate Bowel
Preparations in Older Adults," addresses sodium picosulfate use
in Canada.  Dr. DiPalma's declaration further addresses the
efficacy studies for the bowel preparation treatments.

Similar to Dr. Rex and Mr. McGowan, Dr. DiPalma is neither
retained nor specially employed and his non-retained expert
testimony was disclosed only one day after the deadline for
rebuttal expert testimony.  Ferring has had the opportunity to
counter Dr. DiPalma's declaration through Dr. Bertiger's
supplemental disclosure and any additional foundation needed for
his testimony can be addressed at trial.  The Court will not
strike the declaration of Dr. DiPalma.

### III. **Braintree's Motion to Strike Ferring's Replies to Braintree's Counterstatements of Material Facts**

In support of its motions for summary judgment Ferring filed statements of undisputed material facts.  Braintree responded with its own statements of material facts.  On June 3, 2016, Ferring filed an assented-to motion for leave to file replies in support of its motions for summary judgment.  The assented-to motion asserted that Ferring would file two 15-page reply briefs along with, among other things, responses and objections to Braintree's counterstatements of material facts.

Braintree asserts that Ferring's responses to Braintree's counterstatements of material facts are not permitted under Local Rule 56.1 and that consequently they should be stricken. LR, D.Mass 56.1.  Braintree further contends that even if such responses were permitted, Ferring's responses exceed the scope of Local Rule 56.1 responses because they are not concise and include evidentiary arguments, inferences and exhibits. Id. Ferring responds that its responses and objections to Braintree's counterstatements of material facts are permissible because the Court allowed the assented-to motion requesting leave to file them, and Fed. R. Civ. P. 56(c)(1)-(2) permit parties to reply and object to counterstatements of material facts.

While the Court agrees with Braintree that Ferring's replies are needlessly lengthy and notes that Braintree's responsive statements of facts are hardly concise at 51 and 95 pages, the Court will not strike Ferring's replies.  The assented-to motion refers to Ferring's intent to file responses and objections to Braintree's counterstatements of material facts.  It is within this Court's discretion to allow the responses and objections to stand, see Castello v. Martin, 197 F. App'x 14, 16-17 (1st Cir. 2006), but it hastens to note that it will give scant consideration to improper legal and factual assertions from either party.

### IV.  Braintree's Renewed Motion to Unseal Certain Testimony and Documents

#### A. Legal Standard

There is a well-established presumption of public access to judicial documents. Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 408 (1st Cir. 1987).  Non-disclosure of judicial records can be justified for "only the most compelling reasons." Id.  District courts therefore "must carefully balance the competing interests that are at stake in the particular case." Siedle v. Putnam Investments, Inc., 147 F.3d 7, 10 (1st Cir. 1998).  What constitutes sufficient cause depends on the nature of the records the parties seek to impound.  The more essential a document is to the Court's core function of

adjudicating the parties' claims, the higher the burden to overcome the presumption of public access. Bradford & Bigelow, Inc. v. Richardson, No. 13-cv-11025-RWZ, 2015 WL 3819234 at *2 (D. Mass. June 19, 2015).

Furthermore, the First Circuit Court of Appeals has held that the possible revelation of embarrassing information does not provide adequate reason to seal records. Siedle, 147 F.3d at 10.  Instead, the moving party must provide "a particular factual demonstration of potential harm." Standard Fin. Mgmt. Corp., 830 F.2d at 412.  In accordance with the First Circuit Court of Appeals, this Court declines to adopt the presumption that parties should be "entitled to rely upon the enforceability of a protective order." See In re Grand Jury Subpoena, 138 F.3d 442, 444–45 (1st Cir. 1998).

### B. Analysis

This Court authorized a protective order applicable to discovery in this case on April 9, 2015.  It lays out requirements for parties to label discovery as "confidential" or "highly confidential."  As explained in the order, an item is confidential if it "contains nonpublic confidential, proprietary, or commercially sensitive information," and an item is highly confidential if it contains confidential information that is also "forward-looking or currently relevant" and "constitutes highly sensitive technical, development, or

-21-

financial information" regarding, among others things, the parties' strategic plans, products or trade secrets.  The protective order further declares that if a designation is challenged, the designating party has the burden of showing that 1) the item falls within a protected category under the order and 2) good cause for impounding the document exists under Fed. R. Civ. P. 26(c).

Braintree renews its motion to unseal certain testimony and documents, including briefs and exhibits related to Braintree's motion for summary judgment, Daubert motions, summary judgment oppositions and motion under Rule 56(d) and 37.  According to Braintree, Ferring has designated the vast majority of its discovery as highly confidential even when it is not forward-looking or currently relevant as required by the order. Braintree asserts that counsel should be permitted to share information with their client's in house counsel or management, especially at the adjudicative stage.  Ferring responds that the Court should not be required to spend time re-designating the sealed information and that examining the documents before pretrial is impractical.  In Ferring's view, the documents at least meet the confidential standard.

Ferring fails to provide particular factual demonstrations of harm that would occur were the documents unsealed. See Standard Fin. Mgmt. Corp., 830 F.2d at 412.  Bare assertions of

-22-

inconvenience are insufficient cause to seal documents.
Similarly, Ferring's contention that all of its emails are
confidential without providing good cause for sealing the emails
is unavailing.  Ferring's concerns about protecting private
information in its emails can be addressed by redacting the
names and identifying information of doctors and their offices.

Ferring raises specific concerns about parts of Dr.
Bertiger's deposition and information regarding an internal
study that he conducted in 2013.  Ferring also maintains that
Dr. Bertiger's discussion of the use of additional hydration in
his deposition, including anecdotes from his practice, is
confidential and should remain sealed.  Because the internal
study dates back to 2013, it is neither forward looking nor
currently relevant as required for the highly confidential
designation.  While the study and deposition may contain non-
public, confidential information as required for the
confidential category, Ferring must also meet its burden to show
good cause under Fed. R. Civ. P. 26(c).  Ferring has not
demonstrated the required particular factual need for the
continued sealing of the information.  Standard Fin. Mgmt.
Corp., 830 F.2d at 412.  Consequently, Ferring has failed to
meet its burden under the protective order to show that good
cause to seal the items exists, and the Court will, therefore,
allow Braintree's motion to unseal.

-23-

## Order

For the foregoing reasons,

1. Ferring's motion to strike (Docket No. 428) is **DENIED,**

2. Ferring's motion to strike (Docket No. 404) is **DENIED,**

3. Ferring's motion to strike (Docket No. 478) is, with respect to paragraph five in Ms. Pickering's supplemental declaration and Exhibit B to that declaration, **ALLOWED** but otherwise **DENIED,**

4. Ferring's motion to strike (Docket No. 475) is **DENIED,**

5. Braintree's motion to strike (Docket No. 500) is **DENIED** and

6. Braintree's renewed motion to unseal (Docket No. 516) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 14, 2016